IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| KENNETH LYLE DAVIS, | ) |
|     Petitioner, | ) |
| v. | ) No. 1:13-1177-JDB-egb |
| ROBERT E. COOPER, JR. | ) |
|     Respondent. | ) |

**ORDER OF DISMISSAL,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH,
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

On June 7, 2013, Petitioner Kenneth Lyle Davis, who is currently on parole in Milan, Tennessee, filed a petition pursuant to 28 U.S.C. § 2254, a memorandum in support, and supporting exhibits. (Petition ("Pet."), ECF No. 1, Memorandum ("Mem.") in Support ("Supp."), ECF Nos. 1-1 & 1-2, Exhibits ("Ex."), ECF No. 1-3.) Petitioner paid the filing fee. (Receipt, ECF No. 2.) On October 22, 2013, the Court directed Respondent, Robert E. Cooper, Jr., then Attorney General of Tennessee, to file a response to the petition. (Order, ECF No. 4.) On December 13, 2013, Respondent filed the state court record (Record ("R."), ECF No. 7.) and on December 16, 2013, an answer. (Answer, ECF No. 8.) On January 8, 2014, Davis filed a reply. (Reply, ECF No. 9.)

As is more fully discussed below, the issues raised here by Petitioner fail because the state court identified and applied the correct governing legal principles from federal law. Therefore, the petition is DISMISSED.

## I. STATE COURT PROCEDURAL HISTORY

On May 1, 2007, a grand jury in Madison County, Tennessee indicted Davis on one count of possession of methamphetamine with the intent to sell and/or deliver, one count of possession of drug paraphernalia, one count of driving on a cancelled, suspended, or revoked license, and one count of reckless driving. (R., Indictments, ECF No. 7-1 at PageID 102-06.) On September 27, 2007, a jury trial began in Madison County Circuit Court and concluded with the jury convicting Davis of all counts. (Trial Transcript ("Tr."), ECF No. 7-2 at PageID 160, 277-79.) The trial court sentenced him to an effective ten-year sentence, to be served consecutively to a prior sentence. (R., Judgments, ECF No. 7-1 at PageID 136-39.) Davis' motion for a new trial (Mot., ECF No. 7-1 at PageID 140) was denied on January 15, 2008. (R., Order, ECF No. 7-1 at PageID 144.) He filed a timely notice of appeal. (R., Notice of Appeal, ECF No. 7-1 at PageID 148.) The Tennessee Court of Criminal Appeals ("TCCA") affirmed the trial court's judgments. *State v. Davis*, No. W2008-00226-CCA-R3-CD, 2009 WL 160927 (Tenn. Crim. App. Jan. 23, 2009), *perm. app. denied* (Tenn. June 15, 2009).

On April 13, 2010, Davis filed a *pro se* petition in Shelby County Criminal Court pursuant to the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101 to -122. (R., Pet. for Post-Conviction Relief, ECF No. 7-16 at PageID 606-37.) On June 3, 2010, he filed an amended petition. (R., First Amended ("Am.") Pet., ECF No. 7-16 at PageID 652-67.) On March 1, 2011, Petitioner filed a second amended petition. (R., Second Am. Pet., ECF No. 7-16 at PageID 696-709.) His motion seeking permission to file a third amended petition (R., Motion ("Mot."), ECF No. 7-16 at PageID 747-51) was denied. (Post-conviction Tr., ECF No. 7-19 at PageID 819-20.) After conducting an evidentiary hearing, the post-conviction court entered its order denying relief on September 12, 2011. (R., Order, ECF No. 7-16 at PageID

759-64.)  The TCCA affirmed the denial of relief.  *Davis v. State*, No. W2011-02049-CCA-R3-PC, 2012 WL 3156593 (Tenn. Crim. App. Aug. 2, 2012), *perm. app. denied* (Tenn. Dec. 13, 2012).

## II.  LEGAL STANDARDS

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

### A.  **Exhaustion and Procedural Default**

A federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts pursuant to 28 U.S.C. § 2254(b) and (c).  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  The petitioner must "fairly present"[1] each claim to all levels of state court review, up to and including the state's highest court on discretionary review, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy, *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999).  Tennessee Supreme Court Rule 39 eliminated the need for a habeas petitioner to seek review in the Tennessee Supreme Court and the presentment of the claim to the Court of Criminal Appeals by the litigant shall "be deemed to

---

[1] For a claim to be exhausted, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted).  Nor is it enough to make a general appeal to a broad constitutional guarantee. *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

have exhausted all available state remedies." *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003); *see Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010).

There is also a procedural default doctrine ancillary to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an adequate and independent state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review due to the procedural default doctrine. *Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977); *see Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment") (internal quotation marks and citation omitted)).[2] In general, however, "we may only treat a state court order as enforcing the procedural default rule when it unambiguously relied on that rule." *Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013).

If a petitioner's claim has been procedurally defaulted at the state level, the petitioner must show cause to excuse his failure to present the claim and actual prejudice stemming from the constitutional violation or, alternatively, that a failure to review the claim will result in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 320-21 (1995); *Coleman v.*

---

[2] The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits. *Walker*, 562 U.S. at 315. A state rule is an "adequate" procedural ground if it is "firmly established and regularly followed." *Id.* at 316 (quoting *Beard v. Kindler*, 558 U.S. at 60-61 (2009)). "A discretionary state procedural rule can serve as an adequate ground to bar federal habeas review . . . even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Id.* (quoting *Kindler*, 558 U.S. at 54.) (internal quotation marks and citations omitted).

4

*Thompson*, 501 U.S. 722, 750 (1991). The latter showing requires a petitioner to establish that a constitutional error has probably resulted in the conviction of a person who is actually innocent of the crime. *Schlup*, 513 U.S. at 321; *see also House v. Bell*, 547 U.S. 518, 536-539 (2006) (restating the ways to overcome procedural default and further explaining the actual innocence exception).

### B. Merits Review

Pursuant to Section 2254(d), where a claim has been adjudicated in state courts on the merits, a habeas petition should only be granted if the resolution of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Petitioner carries the burden of proof for this "difficult to meet" and "highly deferential [AEDPA] standard," which "demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 182. A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that

principle to the facts of the prisoner's case." *Id.* at 412-13. The state court's application of clearly established federal law must be "objectively unreasonable" for the writ to issue. *Id.* at 409. The writ may not issue merely because the habeas court, "in its independent judgment," determines that the "state court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *Williams*, 529 U.S. at 411).

There is little case law addressing the standard in § 2254(d)(2) when a decision was based on "an unreasonable determination of facts." However, in *Wood v. Allen*, 558 U.S. 290, 301 (2010), the Supreme Court stated that a state-court factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion.[3] In *Rice v. Collins*, 546 U.S. 333 (2006), the Court explained that "[r]easonable minds reviewing the record might disagree" about the factual finding in question, "but on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice*, 546 U.S. at 341- 42.

The Sixth Circuit has described the § 2254(d)(2) standard as "demanding but not insatiable" and emphasized that, pursuant to § 2254(e)(1), the state court factual determination is presumed to be correct absent clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010). A state court adjudication will not be overturned on factual

---

[3] In *Wood*, the Supreme Court granted certiorari to resolve whether, to satisfy § 2254(d)(2), "a petitioner must establish only that the state-court factual determination on which the decision was based was "'unreasonable,'" or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence." *Wood*, 558 U.S. at 293, 299. The Court ultimately found it unnecessary to reach that issue, and left it open "for another day". *Id.* at 300- 01, 303 (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006), in which the Court recognized that it is unsettled whether there are some factual disputes to which § 2254(e)(1) is inapplicable).

grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *Id.*; *see also Hudson v. Lafler*, 421 F. App'x 619, 624 (6th Cir. 2011) (same).

## III. PETITIONER'S FEDERAL HABEAS CLAIMS

In the § 2254 petition, Davis raises the following issues[4]:

1. The evidence was insufficient to support his convictions for possession of methamphetamine with intent to sell and/or deliver and for possession of drug paraphernalia (Pet., ECF No. 1 at PageID 5); and

2. Trial counsel provided ineffective assistance by:

   a. failing to interview Sergeant Barnes before the suppression hearing and trial (*id.* at PageID 8);

   b. failing to investigate the audio/video mechanics of Sergeant Barnes' on-board video/audio system (*id.*); and

   c. failing to discover the police department's maintenance record requirement for repairs done on fleet vehicles. (*Id.*)

Issue 1 was raised on direct appeal. (R., Brief ("Br.") of the Appellant, ECF No. 7-9 at PageID 476.) Issues 2 (a)-(c) were presented to the TCCA in the post-conviction appeal. (R., Br. of the Appellant, ECF No. 7-21 at PageID 1098-99.) Each claim is addressed below.

## IV. ANALYSIS OF PETITIONER'S CLAIMS

### A. Sufficiency of the Evidence

Davis contends that the evidence was insufficient to support his convictions for possession of methamphetamine with intent to sell and/or deliver and for possession of unlawful drug paraphernalia because the State did not establish constructive possession beyond a

---

[4] Petitioner also contended that the trial court's denial of his motion to suppress was unconstitutional. (Pet., ECF No. 1 at PageID 7.) The State responded that the issue was noncognizable. (Answer, ECF No. 8 at PageID 1238.) In the reply, Davis has conceded that the issue is noncognizable in this federal habeas proceeding and has withdrawn the issue from consideration. (Reply, ECF No. 9 at PageID 1268-69.)

7

reasonable doubt. (Pet., ECF No. 1 at PageID 5.) The State responds that this claim should be dismissed on the merits because the TCCA correctly applied clearly established federal law and made a reasonable determination of the facts. (Answer, ECF No. 8 at PageID 1239.) The Court agrees with the State.

Petitioner relies on his direct appeal argument that the State failed to produce evidence of his knowledge and intent. (Pet., ECF No. 1-1 at PageID 20, 27.) He contends that his ownership of the vehicle was the only evidence linking him to possession of the drugs and drug paraphernalia. (*Id.* at PageID 22.) The inmate also insists that testimony demonstrated that his passenger was in possession of a cylinder of the drugs. (*Id.*) Davis believes that all confiscated items should have been tested for fingerprints. (*Id.* at PageID 22-23.) He maintains that he was merely giving his passenger a ride and that the bag with the confiscated items belonged to the passenger. (*Id.* at PageID 23.) He argues that the State failed to demonstrate that he had any intent to exercise dominion and control over the drugs or contraband. (*Id.*)

The TCCA summarized the facts underlying Petitioner's convictions on direct appeal:

On January 21, 2007, the Defendant was stopped by an officer with the Madison County Sheriff's Department. The vehicle was searched, and illegal drugs and paraphernalia were discovered inside. Subsequently, the Defendant was charged with possession of methamphetamine with the intent to sell; possession of methamphetamine with the intent to deliver; possession of drug paraphernalia; reckless driving; and driving on a canceled, suspended, or revoked license. *See* Tenn. Code Ann. §§ 39-17-417, 39-17-425, 55-10-205, 55-50-504. Thereafter, the Defendant filed a motion to suppress the evidence, claiming that he did not voluntarily consent to the search of his automobile.

A hearing on the motion to suppress was conducted on September 20, 2007. Officer Shane Barnes of the Madison County Sheriff's Department testified that, on January 21, 2007, at approximately 6:45 p.m., he was sitting at a red light at the intersection of North Parkway and Highway 70, located in Madison County. It was dark outside, and "medium traffic conditions" were present in the area. He observed a Ford Ranger pickup truck make a turn at high rate of speed "onto Parkway going westbound from Highway 70."

According to Officer Barnes, the turn was "real noticeable because of the speed and the fact that [the Defendant] went over both lanes of traffic into the turn lane, the opposing lane of traffic." He relayed that the Defendant's vehicle "was speeding in an unsafe condition to make that turn in a proper way." Officer Barnes opined that the Defendant was traveling at forty or fifty miles per hour when he made the turn. Moreover, he described the Defendant's driving as erratic, aggressive, and reckless.

Officer Barnes initiated a traffic stop. Officer Barnes explained to the Defendant that he was checking to see if the Defendant "was impaired or the reason why he made a reckless turn." The Defendant was very cooperative, and Officer Barnes did not smell any alcohol on the Defendant's person. The Defendant had a female passenger, Marilyn Riggs, in the vehicle.

Officer Barnes requested the Defendant's driver's license. Following a check of the license, Officer Barnes learned that the Defendant's license was suspended due to the Defendant's failure to pay child support. Rather than arresting the Defendant, Officer Barnes began issuing a citation and intended on letting the Defendant go. Officer Barnes learned that Ms. Riggs did not have a valid license either. Unwilling to let either individual drive away in the truck, Officer Barnes let the Defendant use his cell phone to have someone come pick them up.

As Officer Barnes "was finishing up the ticket[,]" he asked the Defendant for consent to search the automobile. According to Officer Barnes, the Defendant responded, "Sure. Go ahead. No problem." Officer Barnes waited for another officer to arrive on the scene, which did not take "very long[,]" and he then began searching the vehicle.

Officer Barnes went to the passenger side of the truck, opened the door, and started looking around. He observed a "Game Boy type bag sitting in the middle" between the passenger and the driver. "It was sitting right in the center console." According to Officer Barnes, both individuals would have had access to the bag. Officer Barnes looked inside the bag and discovered approximately 15.9 grams of methamphetamine, six clear glass pipes, one red plastic pipe, a pair of scissors, a white spoon, a small torch, multiple plastic bags of different sizes, a small composition book containing names and phone numbers, and a small metal container. When asked the significance of the items found inside the bag, Officer Barnes stated, based on his experience, that the drugs were for resale.

After discovery of the drugs and paraphernalia, both the Defendant and Ms. Riggs were placed under arrest, and the Metro Narcotics Division was contacted. Neither person claimed ownership of the bag.

On cross-examination, Officer Barnes acknowledged that he did not attempt to get written consent from the Defendant before searching the vehicle. He did not do so because the car was equipped with a video system that recorded traffic stops. However, the audio was not working when Officer Barnes stopped the Defendant, so there was just a video with no sound.

Officer Barnes also stated that he found a small metal vial in Ms. Riggs' possession.

The Defendant testified that Officer Barnes did not request his consent to search his vehicle. Moreover, the Defendant was unaware that his license was suspended. According to the Defendant, Officer Barnes found a metal cylinder under the passenger seat, which "looked like methamphetamines." Officer Barnes asked Ms. Riggs if she was going to claim the cylinder, to which she said no.

On cross-examination, the Defendant acknowledged that he owned the vehicle. He denied that the bag belonged to him.

At the conclusion of the suppression hearing, the trial court determined that the Defendant voluntarily consented to the search of his truck. Thus, the evidence was admissible against the Defendant, and he proceeded to trial.

Officer Barnes provided a similar account of the events at trial. At trial, Officer Barnes further opined that the composition book was a "type of thing commonly used by a drug dealer to keep up with his customers." Officer Barnes also testified that the metal container was found underneath the passenger seat and, in his opinion, appeared to contain methamphetamine. He stated that he observed the container "rolling" when Ms. Riggs exited the vehicle. Officer Barnes further noted that a pill bottle was discovered inside the bag where the drugs were found. Inside the pill bottle was a necklace with a heart charm on it.

The videotape was shown to the jury and admitted as an exhibit. Moreover, testing by the Tennessee Bureau of Investigation confirmed that the two bags discovered during the search of the Defendant's truck contained methamphetamine; 13.8 grams in one bag, and 1.5 grams in the other. No fingerprint analysis was conducted.

The Defendant did not testify at trial or present any evidence in his defense.

*State v. Davis*, 2009 WL 160927 at *1-*3.

After reviewing the trial testimony, the TCCA concluded that the evidence was sufficient to establish that Davis constructively possessed the drugs and paraphernalia. *Id.* at *6. The TCCA held:

> While the Defendant suggested that the contraband found in his truck was Ms. Riggs' and not his, it was the jury's prerogative to accredit witness testimony and weigh the evidence. It was undisputed that the Defendant owned the vehicle and that he was in control of the vehicle when the police stopped him. According to the testimony of Officer Barnes, the methamphetamine was recovered from the center of the seat, within arm's reach of the Defendant. He needed only to reach to the middle of the truck he was driving and take the bag of drugs and paraphernalia into his hand in order to be in actual possession of it. In this case, the jury could reasonably infer from the evidence that the Defendant exercised constructive possession of the methamphetamine with the intent to sell and/or deliver it and possession of the drug paraphernalia.

*Id.*

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court held that:

> "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 - if the settled procedural prerequisites for such a claim have otherwise been satisfied - the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."

443 U.S. at 324. This standard requires a federal district court to examine the evidence in the light most favorable to the State. *Id.* at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").

"Constructive possession requires evidence supporting the conclusion that the defendant had the ability to exercise knowing dominion and control over the items in question." *United States v. Wettstain*, 618 F.3d 577, 586 (6th Cir. 2010) (internal quotation marks omitted). Possession may be established through circumstantial evidence. *United States v. Welch*, 97 F.3d

142, 150 (6th Cir. 1996) (citing *United States v. White*, 932 F.2d 588, 590 (6th Cir. 1991)). The Sixth Circuit has emphasized that constructive possession requires a specific intent. *See United States v. Bailey*, 553 F.3d 940, 945 (6th Cir. 2009). A defendant must "knowingly ha[ve] the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005) (quoting *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998)); *see United States v. Newsom*, 452 F.3d 593, 606 (6th Cir. 2006). Proof that one knowingly and intentionally has dominion over the premises where the contraband is found "is sufficient to establish constructive possession." *Kincaide*, 145 F.3d at 782.

Davis has no credible argument that the decision of the Tennessee Court of Criminal Appeals was contrary to *Jackson v. Virginia*. Officer Shane Barnes testified that the drugs and paraphernalia were found in a Game Boy bag the middle of the front seat of a truck owned and occupied by Petitioner. (R., Trial Tr., ECF No. 7-2 at PageID 176.) The bag was within Petitioner's reach and contained multiple resale baggies, a composition book, scales, approximately six glass crack pipes, a plastic pipe, scissors, and small little containers for carrying and mixing. (*Id*. at PageID 183, 191.) The composition book had names and phone numbers, information of the type used by a drug dealer to keep up with his customers. (*Id*. at PageID 186-87.) Sergeant Barnes testified that the bag was not tested for fingerprints because the surface of the bag was rigid nylon and not an acceptable surface for fingerprints. (*Id.* at PageID 207, 229.) He related that the bag was also within arm's reach of Davis' passenger and that a metal container of suspected methamphetamine was found underneath where she had been sitting. (*Id.* at PageID 207.) The cylinder rolled out when the passenger got out of the seat and was the only confiscated item that was not found in the bag. (*Id.* at PageID 226.) The aggregate

weight of the drugs was 15.3 grams. (*Id.* at PageID 256.) Although it is clear that the passenger had access to the bag, the focus is whether the evidence, "viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *United States v. Burchard*, 580 F.3d 341, 352 (6th Cir. 2009) (quoting *United States v. Solorio*, 337 F.3d 580, 588 (6th Cir. 2003)).

The TCCA applied the correct legal rule and cited as support both *Jackson v. Virginia* and state cases applying the *Jackson* standard. The TCCA determined that, applying all inferences from the evidence most favorable to the State, the evidence was sufficient to establish that Davis constructively possessed the drugs and paraphernalia. *State v. Davis*, 2009 WL 160927 at *6. The evidence and reasonable inferences drawn in favor of the State provided a sufficient basis for a rational factfinder to conclude beyond a reasonable doubt that Davis possessed and was aware of the drugs and paraphernalia under a constructive possession theory because of the obvious location of the bag in his own vehicle.

Based on this Court's review of the transcript of Davis' trial (R., Trial Tr., ECF No 7-2), the testimony and evidence were more than sufficient to permit the jury to find that Davis was guilty of constructive possession of methamphetamine with the intent to sell and/or deliver and constructive possession of unlawful drug paraphernalia. This issue is without merit and is DENIED.

### B. Ineffective Assistance of Counsel

Davis contends that his trial counsel was ineffective because counsel failed to interview Sergeant Barnes before the suppression hearing and trial, failed to investigate the audio/video mechanics of Sergeant Barnes' on-board video/audio system, and did not discover the police department's maintenance record requirement for repairs done on fleet vehicles. (Pet., ECF No.

1 at PageID 8.) The State responds that these claims should be dismissed because the ineffective assistance analysis by the TCCA was not contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). (Answer, ECF No. 8 at PageID 1244.)

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland*, 466 U.S. at 687. To succeed on this claim, a movant must demonstrate two elements: 1) that counsel's performance was deficient, and 2) "that the deficient performance prejudiced the defense." *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance." *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.[5] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' [*Strickland*,] at 693. Counsel's errors must be 'so serious as to

---

[5] If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

deprive the defendant of a fair trial, a trial whose result is reliable.' *Id.*, at 687." *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 687, 693); *see also Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out'" a more favorable outcome to prevail. "Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when reviewing an ineffective assistance claim:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S., at 123, 129 S. Ct. at 1420 [(2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105.

Davis contends that, had counsel interviewed Barnes before the hearing on the motion to suppress, counsel would have discovered the videotape of Davis' arrest had no audio and could have questioned the officer about the reason. (Mem. in Supp. ECF No. 1-1 at PageID 43-44.) Petitioner believes that trial counsel should have investigated why the tape contained no audio. (*Id.*) He points to inconsistencies in Barnes' testimony and contends that an investigation would have undermined the officer's credibility. (*Id.* at PageID 45.) The inmate testified during the post-conviction hearing that counsel should have requested the maintenance records for Barnes' vehicle even though he admitted that none existed. (R., Post-conviction Tr., ECF No. 7-19 at PageID 55-58.)

15

Sergeant Barnes testified at the suppression hearing that the reason he did not obtain written consent to search Davis' vehicle was because his car had a video system and the officer did not realize until later that there was an audio issue. (R., Suppression Tr., ECF No. 7-5 at PageID 329.) Barnes stated that he did not know why the audio did not work because "they check it out and they tell me everything is okay." (*Id.*) He related that the audio problem had been fixed and the current problem with the video was something else. (*Id.*) The witness stated, "it's a little transmitter. It was in the transmitter box and they had to replace that, that was fixed. (*Id.* at PageID 329-30.)

Barnes recalled during the trial that Davis' traffic stop and arrest were recorded on videotape. (R., Trial Tr., ECF No. 7-2 at PageID 209.) He explained the lack of audio, testifying:

> My camera system, you have a box that is a transmitter and the antenna is the mic cable that goes up to the microphone. My antenna had some problems and I didn't have any audio on it. Sometimes it works and sometimes it doesn't. It's been corrected. The box has actually been replaced. That's why there is no audio here because the antenna apparently wasn't making connection with the car antenna. The cable was messed up.

(*Id.* at PageID 214-15.)

At the post-conviction hearing, Barnes said that the video systems in 2008 had a body microphone that ran on a nine volt battery. (R., Post-conviction Tr. ECF No. 7-20 at PageID 967.) Barnes stated that at the beginning of the tour of duty, he checked his system to make sure it was operating properly, but later the battery quit and he did not know it until he reviewed the tape. (*Id.* at PageID 967-68.) He testified that the light is on, but the audio is not coming through because, once out of the car, it operated on radio frequency. (*Id.* at PageID 968.) The

officer stated that he replaced the battery himself. (*Id.*) He further explained the battery was in the transmitter box which is attached by cables on the duty belt. (*Id.* at PageID 969.)

Trial counsel admitted that he did not investigate whether the Sheriff's departments were required to keep records of maintenance on video systems. (R., Post-conviction Tr., ECF No. 7-19 at PageID 925.) Counsel testified that, while he could have investigated maintenance records, he did not see that it was relevant to Davis' guilt. (*Id.* at PageID 926.) Counsel observed that he did not believe anything was wrong with the video other than the lack of audio and, in his opinion, the audio had not been intentionally removed. (*Id.* at PageID 929.)

Captain Anthony Heavner testified at the post-conviction hearing that, at the time of Davis' arrest, he was in charge of maintenance of Sheriff's Department fleet vehicles. (*Id.* at PageID 947.) He recalled that he responded to Davis' request for maintenance records on Sergeant Barnes' vehicle, in a letter stating:

> After having spoken with you by phone on January 19, I did speak with Sergeant Barnes regarding the incident on January 1, 2007. He stated there was no repair needed to the video/audio recording and the sending unit volt battery had run down. Sergeant Barnes stated that he replaced the battery with a new one.

(*Id.* at PageID 949, ECF No. 7-20 at PageID 955.) Heavner stated there were no maintenance records because there were no repairs. (*Id.* at PageID 955-56.) He noted that he did not keep records about batteries running down and that Barnes had replaced the battery himself. (*Id.* at PageID 957.)

The post-conviction trial court determined that there were no maintenance records that could have been discovered to impeach Sergeant Barnes' testimony. (R., Order, ECF No. 7-16 at PageID 762.) The post-conviction court concluded:

> There was a minor inconsistency in the officer's explanation for the failure of his transmitter between his suppression hearing testimony and the explanation at trial.

> Both explanations, however were consistent with a bad battery. This issue is expanded way out of proportion by the petitioner. Trial counsel was certainly not responsible for the officer's testimony, and there were no maintenance records to find. Furthermore, consent to search was not an issue before the jury. That issue had already been resolved at the suppression hearing . . . . Trial counsel complied with all professional standards, and the petitioner had competent counsel and a fair trial.

(*Id.* at PageID 763.)

During the post-conviction appeal, the TCCA identified and cited the proper standard for the analysis of Petitioner's claims of ineffective assistance. *Davis*, 2012 WL 3156593, at *9-11. After reviewing the post-conviction trial court's determination, the TCCA held:

> The Petitioner contends Counsel was ineffective because he failed to adequately investigate the following: the circumstances surrounding the traffic stop; the videotape mechanics; and police department maintenance records. The Petitioner notes that Officer Barnes testified during the suppression hearing, explaining the equipment malfunction by saying "[I]t's a little transmitter. It was in the transmitter box and they had to replace that. That was fixed." The Petitioner states that Counsel failed in his duty to investigate whether there were any maintenance records indicating that the transmitter box had been replaced. The State counters that Counsel's explanation for not pursing [sic] the circumstances surrounding the traffic stop and the malfunctioning audio equipment was reasonable and that the Petitioner had not proven that he was prejudiced by Counsel's representation.
>
> . . .
>
> We agree with the post-conviction court that the Petitioner has not proven by clear and convincing evidence that Counsel was ineffective in this regard. The evidence proved that the audio equipment malfunctioned because of a low battery. Officer Barnes changed the battery, which did not produce any maintenance records for Counsel to find. . . . He is not entitled to relief on this issue.

*Id.* at *11. The Tennessee courts found that trial counsel's performance was not deficient and Davis failed to establish any prejudice. *Id.*

Based on this Court's review of the post-conviction testimony (R., Post-conviction Tr., ECF No. 7-19 & ECF No. 7-20), as well as the transcript of the hearing on the motion to

suppress (R., Mot. to Suppress Tr., ECF No. 7-5) and the transcript of trial (R., Trial Tr., ECF No. 7-2), Davis failed to either establish that his trial counsel was deficient in his representation or that he suffered any prejudice from counsel's decisions. Deference to the state court decision on these issues is therefore appropriate. Issues 2(a)-(c) are DENIED.

The issues raised in this petition are without merit. The petition is DISMISSED WITH PREJUDICE. Judgment shall be entered for Respondent.

## V. APPELLATE ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003). The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2)-(3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (holding a prisoner must demonstrate that reasonable jurists could disagree with the district court's resolution of his constitutional claims or that the issues presented warrant encouragement to proceed further). A COA does not require a showing that

the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011) (same). However, courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Slack*, 537 U.S. at 337).

In this case, there can be no question that the claims in this petition are without merit. Because any appeal by Petitioner on the issues raised in this petition does not deserve attention, the Court DENIES a certificate of appealability.

In this case for the same reasons it denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith and leave to appeal *in forma pauperis* is DENIED.[6]

IT IS SO ORDERED, this 7th day of November, 2016.

**s/ J. DANIEL BREEN**
J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days of the date of entry of this order. *See* Fed. R. App. P. 24(a)(5).